UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

 Plaintiff,

v.

              Case No. 2:22-cv-11239
              Hon. Matthew F. Leitman

DIANE SZOSTAK (a/k/a DIANNE SZOSTAK);
SHAWN MICHELLE ANDERSON,
TRICIA ANN TRIMBLE, and
JOHN DOE as Trustee of the
PATRICIA ANN ANDERSON TRUST,

 Defendant.
_____/

## ORDER GRANTING PLAINTIFF UNITED STATES OF AMERICA'S SUPERSEDING MOTION FOR SUMMARY JUDGMENT (ECF No. 40)

  In this action, Plaintiff United States of America alleges that Defendant Diane Szostak a/k/a Dianne Szostak is liable for unpaid federal income taxes, penalties, and interest. (*See* Compl., ECF No. 1, PageID.1.) The United States seeks a money judgment against Szostak in the amount of those liabilities and a determination that the federal tax liens securing those liabilities may be enforced against property located at 4633 Capac Road, Mussey, MI 48014[1] (the "Capac Road Property"). (*See*

---

[1] This property has also been identified by an alternative address of 4633 Capac Road, Capac, MI 49104. (*See* Mot., ECF No. 40, PageID.703.)

1

*id.*) Now before the Court is the United States' motion for summary judgment. (*See* Mot., ECF No. 40.) For the reasons explained below, the motion is **GRANTED**.

## I

The United States asserts three claims against Szostak. First, the United States seeks judgment against Szostak for unpaid federal income taxes, penalties, and interest for tax year 2011. (*See* Compl., ECF No. 1, PageID.3-4.) Second, the United States seeks penalties against Szostak for frivolous submissions she made to the Internal Revenue Service (the "IRS") with respect to tax years 2007, 2008, and 2011. (*See id.*, PageID.4-5.) Third, the United States seeks a determination that federal tax liens securing Szostak's unpaid liabilities may be enforced against the Capac Road Property. (*See id.*, PageID.5-8.) The underlying facts of each claim are briefly summarized below.

### Tax Year 2011

In 2011, Szostak received taxable income from several sources. First, she moved assets from her individual retirement account ("IRA") to her brokerage account, closed her IRA, and, as a result, received IRA distributions of $1,138,662.30. (*See* Szostak Dep. at 42:1-5, 42:16-43:24, 52:14-53:7, ECF No. 40-11; Account Statement, ECF No. 40-10, PageID.1095-1096; Account Statement, ECF No. 40-7, PageID.62-63, 70; 2024 Bacon Decl. at ¶¶ 10-11, ECF No. 40-3.)

Second, she received ordinary dividends of $1,230. (*See* 2024 Bacon Decl. at ¶ 15, ECF No. 40-3.) Third, she earned taxable interest of $4. (*See id.* at ¶ 16.)

Szostak was entitled to reduce her taxable income in 2011 in several respects. First, she incurred a net capital loss of $22,375.17, and she was entitled to treat $3,000 of that loss as a deduction for the tax year (while the rest of the loss had to be carried over to future tax years and applied as $3,000 deductions for each of those years). (*See id.* at ¶ 14.) Second, she was entitled to take a standard deduction of $5,800. (*See id.* at ¶ 18.) Finally, she was permitted to take additional exemptions totaling $3,700. (*See id.*)

In the end, Szostak's taxable income for tax year 2011 was $1,127,396. (*See id.* at ¶ 19.) That resulted in a tax liability of $371,903. (*See id.* at ¶ 21.) Szostak is also subject to additional liability for statutory failure-to-pay penalties and interest on that balance. (*See id.* at ¶¶ 23-28.) This additional liability was $471,475.91. (*See id.* at ¶ 29.) Thus, Szostak's liability for tax year 2011 totaled $843,378.91. (*See id.*)

On December 15, 2014, a delegate from the Secretary of the Treasury assessed a federal income tax liability against Szostak for the 2011 tax year. (*See* Certificate of Assessments, ECF No. 40-6.[2]) The IRS issued a Collection Due Process levy and

---

[2] The 2014 assessment overstated Szostak's tax liabilities by $112,038 because of a lack of information as to Szostak's transactions during tax year 2011. During third-party discovery in this action, the IRS learned that Szostak incurred a net capital loss of $22,375.17 rather than a net capital gain in that amount. (*See* Notice Regarding Recomputation, ECF No. 36, PageID.521.) The United States recomputed Szostak's

began collection. (*See id.*) The United States was able to recover some, but not all, of that amount by issuing levies. (*See* 2024 Bacon Decl. at ¶ 22, ECF No. 40-3.) As of December 31, 2023, Szostak's outstanding liability for tax year 2011, exclusive of the additional frivolous filing penalties discussed below, was $579,956.40. (*See id.* at ¶¶ 29-30.)

**Frivolous Tax Submission Penalties**

On September 19, 2018, IRS Revenue Officer Megan Giolitti met with Szostak in person to address matters related to Szostak's tax liabilities. (*See* Giolitti Decl. at ¶¶ 4-5, ECF No. 40-2.) At that meeting, Szostak provided Giolitti with a binder of documents requesting refunds or abatements for tax years 2007, 2008, and 2011 on the ground that the IRS "could not determine a tax to be due and owing" for those years. (*See id.* at ¶ 5.) The binder also contained a 100-page memorandum, in which Szostak "included several references to the Constitution" and ultimately stated "The time for this Agency 'to give up the ghost' is Now at Hand!!!" (*Id.*) Szostak then sent a package to Giolitti "with a letter claiming that liens and levies were unlawful and the issuance of a summons in the case was done only to harass Szostak and was a violation of the law." (*Id.* at ¶ 6.) Giolitti sent Szostak's submission to IRS' Frivolous Return Program in Ogden, Utah. (*See id.*)

---

tax liability with the correct information and the tax liability was reduced from $483,941 to $371,903. (*See id.*)

4

After reviewing Szostak's materials, a delegate of the Secretary of the Treasury assessed civil tax penalties against Szostak for frivolous tax submissions in the amount of $5,000 each for tax years 2007, 2008, and 2011. (*See* 2023 Bacon Decl. at ¶ 4, ECF No. 40-1; Forms 4340, ECF Nos. 40-14, 40-15, 40-16.) In sum, as of December 1, 2022, the penalties and interest amount to $17,417.98. (*See id.*)

### The Capac Road Property

Szostak and her late husband purchased the Capac Road Property, which is located in St. Clair County, Michigan, via a warranty deed in April of 1999. (*See* Warranty Deed, ECF No. 40-17.) In February of 2012, shortly after the close of tax year 2011, Szostak transferred the Capac Road Property to her daughters via a quitclaim deed for the full consideration of $1.00. (*See* Quitclaim Deed, ECF No. 40-18.) Szostak drafted the deed and requested that the St. Clair Register of Deeds return it to her at the address of the Capac Road Property. (*See id.*) A mere four months later, in June of 2012, Szostak's daughters then transferred the Capac Road Property to a trust for the full consideration of $1.00. (*See* Quitclaim Deed, ECF No. 40-19.) Szostak again drafted the deed and requested that the St. Clair County Register of Deeds return it to her at the address of the Capac Road Property. (*See id.*) The deed indicates that the address for the trust is the same as the address of the Capac Road Property. (*See id.*) To this day, Szostak continues to reside at the Capac Road Property. (*See* Szostak Dep. at 8:12-14, ECF No. 40-11, PageID.1363.)

In 2017, 2019, and 2020, the United States recorded notices of federal tax liens in the St. Clair County Register of Deeds for her unpaid taxes, interest, and penalties for tax year 2011. (*See* Notices of Federal Tax Lien, ECF Nos. 40-20, 40-21.) The liens stated that they attached to "all property and rights to property" belonging to Szostak. (*See id.*)

**D**

The United States filed its Complaint in this action on June 6, 2022. (*See* Compl., ECF No. 1.) The United States named as defendants Szostak, her two daughters, and the trust to whom the daughters conveyed the Capac Road Property. (*See id.*) Szostak's daughters and the trust failed to answer or otherwise respond to the Complaint, and the Clerk of the Court subsequently entered a default against them. (*See* Entries of Default, ECF Nos. 7, 9, 14.) Szostak also initially failed to respond to the Complaint, and a default was also entered against her. (*See* Entry of Default, ECF No. 8.) She later appeared *pro se*, and the Court set the default against her aside. (*See* Order, ECF No. 26.)

Both before and after the Court set the default aside, the Court gave Szostak an opportunity to obtain counsel and, indeed, strongly advised her to do so. (*See, e.g.*, Dkt., March 20, 2023; Hr'g Tr. 4/21/2023, ECF 27, PageID.242-243, 245, 250.) To date, no attorney has appeared in this action on Szostak's behalf.

6

The United States has now moved for summary judgment against Szostak. (*See* Mot., ECF No. 40.)  The United States contends that the "undisputed material facts show" that Szostak

> is liable for unpaid federal income taxes totaling $579,956.40, including penalties and interest, for her 2011 tax year (as of December 31, 2023), and for civil penalties of $5,851.78 for her 2007 income tax year, $5,783.10 for her 2008 tax year, and $5,783.10 for her 2011 tax year (all civil penalty amounts as of December 1, 2022).

(*Id.*, PageID.691.)  The United States further contends that the "undisputed material facts" show that those federal tax liens may be enforced against the Capac Road Property. (*See id.*, PageID.692.)

Szostak responds that the Court should deny the motion because there are disputed questions of fact remaining in this action. (*See* Resp., ECF No. 43.)

The Court concludes that it may resolve the motion without oral argument. *See* Local Rule 7.1(f)(2).

## II

The United States seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its

7

favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

### III

### A

The Court begins with the portion of the United States' motion seeking judgment that Szostak is liable for $597,374.38 in outstanding tax liabilities, penalties, and interest on unpaid federal taxes for tax years 2007, 2008, and 2011. As described above, the United States has supported its motion for summary judgment with substantial evidence that Szostak is liable for that amount. In order to defeat the United States' motion, Szostak must come forward with contrary evidence that tends to support her contention that she has no (or reduced) liability for the tax years at issue. She has failed to do so.

Indeed, Szostak's response to the United States' motion does not cite any actual evidence at all. Instead, without identifying a single supporting fact, Szostak simply "state[s] and claim[s]" that "there are still issue(s) of material fact(s) in question." (Resp., ECF No. 43, PageID.1515.) "But saying it does not make it so." *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022).

Szostak also contends that granting summary judgment now would be "premature" because she and the Court need to "look into" certain matters related to the claims against her. (Resp., ECF No. 43, PageID.1516.)  She then asks the Court to authorize "another round" of "[d]iscovery." (*Id.*, PageID.1517.)  But she has not shown any basis for delaying the entry of judgment or for re-opening discovery.  She had more than five months to take discovery (*see* Order, ECF No. 32), and she has failed to demonstrate that she could not complete all necessary and appropriate discovery during that period.

Finally, Szostak offers a couple of legal arguments in opposition to the United States' motion, but none of those arguments have merit.  For instance, Szostak seems to suggest, without citing any supporting authority, that distributions from her (traditional, rather than Roth) IRA should not be treated as ordinary income (*see* Resp., ECF No. 43, PageID.1515), but the United States Tax Court has held to the contrary. *See, e.g.*, *Bernard v. Comm'r*, 104 T.C.M. (CCH) 136, 2012 WL 3114775, at *4 (T.C. 2012).  Likewise, Szostak appears to argue that the Supreme Court's decision in *Loper Bright v. Raimondo*, 144 S.Ct. 2244 (2024), undermines the United States' claims against it. (*See* Resp., ECF No. 43, PageID.1516.)  It does not.  In that case, the Supreme Court addressed the "limited . . . question whether *Chevron* [*U.S.A., Inc. v. Nat. Res. Def.  Council, Inc.*, 467 U.S. 837 (1984)] should be

9

overruled or clarified." *Loper Bright*, 144 S.Ct. at 2257.  Szostak has not shown how the *Chevron* doctrine played any role in the assessment of liabilities against her.

In sum, because Szostak has failed to counter the United States' substantial evidence showing her liability with any evidence of her own, the United States is entitled to summary judgment on its claim that Szostak is liable for $597,374.38, with additional interest accrued as described in Section IV below.

**B**

The Court next turns to the United States' claim that it may enforce the tax liens securing Szostak's liability against the Capac Road Property even though the Capac Road Property is not currently titled in Szostak's name.  The Court concludes that the United States is entitled to summary judgment in its favor on that claim.

As the United States correctly notes, under 26 U.S.C. § 6321, if a taxpayer fails to pay assessed taxes (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) after notice and demand, a lien in favor of the IRS attaches to all of the taxpayer's property and rights to property in the amount of the unpaid liability. *See United States v. Porath*, 490 F. App'x 789, 793 (6th Cir. 2012).  And the lien arises when the assessment is made, even if a notice of lien is not recorded at that time. *See* 26 U.S.C. § 6322; *United States v. Barr*, No. 07-11717, 2008 WL 4104507, at *1 (E.D. Mich. Sept. 2, 2008).  Here, as described in detail above, a delegate of the Secretary

of the Treasury made an assessment against Szostak in 2014 for her tax year 2011 outstanding tax liabilities (*see* Certificate of Assessments, ECF No. 40-6), and made additional assessments against her in April 2019 for civil penalties based upon frivolous tax submissions (*See* Certificates of Assessments, ECF Nos. 14, 15, 16), and thus liens against Szostak's property arose at that time.

The Capac Road Property was not titled in Szostak's name when the liens arose, but the liens may nonetheless be enforced against that property because the United States has shown that Szostak's transfer of the property amounted to a fraudulent conveyance under Michigan law. *See Porath*, 490 F. App'x at 795–97 (holding that lien arising from assessment against taxpayer could be enforced against property no longer titled in his name because the transfer from the taxpayer was shown to be a fraudulent conveyance under Michigan law). Under Mich. Comp. Laws § 566.34(1)(a), a transfer is fraudulent and voidable if the debtor (Szostak here) made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor." Mich. Comp. Laws § 566.34(1)(a). And "[i]n determining actual intent" under the statute, "consideration may be given … to whether 1 or more of the following [among other things] occurred:

> (a) The transfer or obligation was to an insider.
>
> (b) The debtor retained possession or control of the property transferred after the transfer.
>
> [….]

11

> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

Mich. Comp. Laws § 566.34(2)(a)-(j).  A "'concurrence of several of these factors will always make out a strong case' in support of fraudulent intent." *John Ceci, P.L.L.C. v. Johnson*, No. 288856, 2010 WL 1872927, at *4 (Mich. App. May 11, 2010) (quoting *Bentley v. Caille*, 286 N.W.2d 163, 164 (Mich. 1939) (finding three factors sufficient and ordering the trial court to enter summary disposition in favor of the plaintiff)).

The United States has demonstrated that all four of the statutory factors set forth above are met here. (*See* Mot., ECF No. 40, PageID.715.)  More specifically, as described in detail above, the United States has shown that (1) Szostak transferred the Capac Road Property to her daughters, who qualify as insiders, *see* Mich. Comp. Laws 566.31(i)(i)(A), (2) Szostak remained in possession of the Capac Road Property even after deeding the property to her daughters, (3) Szostak transferred the Capac Road Property for $1.00, which is surely less than its fair value, and (4) Szostak transferred the Capac Road Property shortly after the conclusion of the 2011 tax year.  The confluence of these four factors is sufficient to establish that Szostak transferred the Capac Road Property with "actual intent to hinder, delay, or defraud" the United States. Mich. Comp. Laws § 566.34(1)(a).

12

Szostak offers no evidence on any of these four factors – and, indeed, has failed to offer any evidence on any of the statutory factors that a court must consider in determining whether a transfer was made with the intent to hinder, delay, or defraud creditors. Instead, Szostak simply asserts that she did not transfer the Capac Road Property with fraudulent intent. (*See* Resp. ECF No. 43, PageID.1515.) But, again, her conclusory say-so is not enough to avoid summary judgment. Szostak also says that "[t]here has been no finding of 'actual intent' as required by Michigan law" and that the issue of intent "needs to be decided in a St. Clair County Circuit Court." (*Id.*) But the Court has now made a finding that she acted with the required "actual intent," and she cites no authority for the proposition that the issue of her intent could only be decided by the St. Clair County Circuit Court.

For all of these reasons, the transfer of the Capac Road Property is void as to the United States, and the United States may enforce the tax liens securing Szostak's liabilities against that property.

## IV

For all of the reasons stated above, United States' motion for summary judgment (ECF No. 40) is **GRANTED. IT IS HEREBY ORDERED** that:

1. Szostak is liable for $579,956.40 in outstanding unpaid federal taxes, penalties, and interest for tax year 2011. Szostak is also liable for interest accrued on this balance since December 31, 2023.

2. Szostak is liable for $17,417.98 in outstanding unpaid penalties and interest for frivolous tax submissions for tax years 2007, 2008, and 2011. Szostak is also liable for interest accrued on this balance since December 1, 2022.

3. Szostak's transfer of the Capac Road Property is void. The following federal tax liens attach to and may be enforced against the Capac Road Property:

| Recording Date | St. Clair County Instrument # | St. Clair County Liber-Page | Recorded Against |
|---|---|---|---|
| 07/07/2017 | 100263600 | 4846-953 | Dianne Szostak |
| 06/12/2019 | 100263902 | 5065-690 | Dianne Szostak |
| 06/26/2020 | 100264306 | 5205-626 | Patricia Ann Anderson Trust (as nominee of Dianne Szostak) |

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 19, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126